Smith *v.* Gugerty.

---

SAME TERM. *Before the same Justices.*

SMITH *vs.* GUGERTY.

Upon a writ of error it is the province of the court to decide questions of law, and not questions of fact, upon which there has been a conflict of evidence. *Per* STRONG, P. J.

Parties to building-contracts, should be exact in the fulfilment of their agreements, even to the smallest particulars ; and if they wilfully or carelessly depart from any one of them, they should incur the penalty, however severe it may be. But if a party, while acting in good faith, and with a determination to do what he has contracted to do, unintentionally, and without any negligence, happens in some trifling and unimportant matter to vary or depart from the terms of his agreement, the law is not so severe and exacting as to deprive him of all compensation. It ever regards the substantial rights of parties, but overlooks trivial and unimportant matters. *Per* STRONG, P. J.

Smith *v.* Gugerty.

If there is an honest effort to perform the contract, according to the letter, and it is substantially fulfilled, the builder is entitled to receive the reward of his labor, although he may not have complied with its terms literally, in every instance.

A substantial compliance, without any intentional variation, should in all cases be considered as a full preformance of a condition, whether precedent or subsequent.

A party cannot take advantage of the non-performance of a condition, if such non-performance has been caused by himself.

Where, after the making of a building-contract, additions to the original specifications are made, at the request of the owner, increasing the labor and requiring additional time, the time limited for the completion of the contract will be deemed to have been extended, by mutual agreement of the parties, if an extension is necessary, for the protection of the contractor.

The failure of a party to a contract to complete the same within the time limited therein will not prevent a recovery, upon a performance of the agreement after the time specified, if the delay was assented to, by the other party.

It is not necessary that such assent should be in writing, or that it should be established by positive testimony. It may be inferred from the circumstances.

From what circumstances the assent of a party to a contract, to a delay in the performance thereof, by the other party, may be inferred.

There may be an effectual waiver, by parol, of a condition specified in a written agreement. So held in reference to a provision in a building contract, requiring a written memorandum for extra or omitted work.

A witness may be asked his opinion, as an expert, when the question relates to a deduction from facts concerning which he has a knowledge peculiar to his science, art or profession, and which knowledge is not common to the world.

Accordingly *held*, in an action upon a building-contract, that a mason might be asked how long it would take to dry the walls of a house, so as to render it fit and safe for human habitation.

ERROR to the superior court of the city of New-York. The action was assumpsit. Before issue was joined, the parties entered into a stipulation, dated June 27th, 1840, in these words : "The plaintiff may declare in this case on the common counts, for work and materials, money counts, and account stated—and the defendant plead the general issue, and notice of set-off. Under these pleadings the parties may respectively give in evidence against each other, all claims and counter claims which they may respectively have, and which either party might recover against the other in any action or proceeding whatever; and the just and true balance only shall be found or certified by the jury or referees. But this stipulation shall not prevent

the parties from requiring of each other bills of particulars according to the course and practice of the court, and either party may move to set aside the report of referees on the merits." The pleadings were in accordance with this stipulation. The cause was referred to referees. On the trial before them, the plaintiff gave in evidence an agreement between the parties, dated June 27th, 1839, by which Gugerty, the defendant, agreed with Smith the plaintiff, that he would in a good, substantial and workmanlike manner, execute all the mason work of three four-story brick buildings, to be erected by Smith, upon his lots at the south-easterly junction of Pitt and Stanton-streets, and the easterly lot on Stanton-steet, and also all other mason work specified in the specification therein mentioned ; and that he, the said Gugerty, would, at his own proper cost and expenses, furnish and provide all the materials necessary for the performance of such mason work ; and that he would perform such work and furnish such materials, in strict accordance and conformity, in all respects, with the specification for such buildings, executed or subscribed by the parties, and annexed to such agreement, and in similar strict accordance and conformity with the plans and drawings for said buildings, prepared by Edward J. Webb, the architect; and that in the performance of said work, Gugerty should be under the control and direction of said Webb, as stated in said specification. All which mason work Gugerty agreed to perform and complete in manner aforesaid, so that the house might be completed, finished (if the carpenter should be guilty of no default,) on or before the twentieth day of October then next, in full conformity with such contract and specification. In consideration of which Smith agreed to pay to Gugerty for said work, the sum of five thousand nine hundred dollars, by instalments in the manner therein mentioned, as the work progressed ; each payment to be made when the architect having charge of the buildings should certify in writing, that the work had been performed which entitled Gugerty to such payment. And it was further covenanted and agreed by and between the parties, that if the said Edward J, Webb should die, or for any other reason, leave

or be removed from, the work aforesaid before its completion, Smith should have the right to select another person as successor of said Webb, to superintend as architect the work aforesaid, having the same power and control over the said work as the said Webb would have had if he had continued to superintend: and that, when the architect having charge of said work and buildings, should decide that there had been any default, omission, or departure from the contract or specification, on the part of Gugerty, such decision should be binding and conclusive upon said Gugerty, and should not be called into question by him. By the specification referred to in the agreement, and annexed thereto, it was stated that the intended houses were to be strictly in accordance with such specification and the plans exhibited, except directed by the owner, or his agent, to be otherwise constructed, " and in a following clause the said owner will reserve the right to alter, add or omit either workmanship or materials, as may appear advisable to be done; therefore the owner aforesaid reserves the following powers, after the contract is signed: he agrees to pay and allow to the person contracting to fulfil this specification, a fair valued price for any workmanship or materials that he shall order to be done by a written memorandum from him to the contractor; that is, for any addition or alteration so ordered that may add to such contractor's expense; and he also makes it a right to claim a fair valuation for either workmanship or materials which by a written order delivered to the contractor by a third person, he, the owner, shall think proper to have omitted: and the proof of delivery of such order for omission to the contractor by a third person, shall be binding on the party concerned, should the said order be lost or mislaid. But no such deviation from the original plans shall impair the contract between the said parties, or destroy its binding influence or validity." It was also stipulated that the materials were to be the best of their respective kinds, unless otherwise specified; and in order to insure that the requirements of the specification should be adhered to, the owner reserved the right to appoint a duly qualified person to superintend the buildings, should he think proper

so to do, and such appointed superintendent was to have the sole privilege of judging what was, and what was not, of the quality intended by the spirit and letter of the specification; and it was specified that the work should be completed by the 15th day of October then next. And that Edward J. Webb had been chosen by the owner to superintend the work, and to examine the materials, and that the owner would empower him to look to his interests in the erection of the buildings. The defendant gave in evidence, upon the trial, the following certificate signed by the said Webb, dated March 3d, 1840, and directed to the plaintiff:

"Sir—In regard to the mason's department for your houses lately erected at the junction of Pitt and Stanton streets, I am by agreement authorized to give a certificate of finish, when it shall appear to me the superintendent, that the state of the work and materials justifies me in so doing. I therefore, as in duty bound, pronounce the said houses finished, and if not literally so in every punctilio, they are done in that manner that, was I the owner, I would accept them for myself. Still, as to extra work, or work or materials omitted that are embraced in the specification, also as to said houses being finished at a stated period of time, is not in my province to express an opinion. I therefore on the work and materials taken as a whole, certify that I am satisfied the houses in question in the mason's department performed by Michael Gugerty are substantially done, trusting that the parties concerned will also be satisfied that I, as superint endent, haveacted conscientiously between them. Given under my hand the day above named."

It is not deemed necessary to detail all the evidence given before the referees. The material facts, and the questions arising thereon, are sufficiently stated in the opinion of the court. The referees reported generally in favor of the plaintiff for $1954,47, for which sum, together with costs, the superior court rendered judgment for the plaintiff, and the defendant brought a writ of error.

*James T. Brady,* for the plaintiff in error.

*Charles O'Conor,* for the defendant in error.

*By the Court,* STRONG, P. J.　The counsel for the defendant in error said truly on the argument, that it is the province of the court, on a writ of error, to decide questions of law, and not questions of fact upon which there has been a conflict of evidence.　Hence it is the usual, and where it is possible, the more correct course, when it is intended to review cases tried before referees, to embody in the record a statement of the facts proved before, and found by them, as a substitute for a special verdict.　But it often happens that the questions of law raised on the trial do not relate so much to the facts themselves, as to the admission, rejection, or import of the testimony adduced or offered to prove them.　In such cases it is proper and indeed necessary, to set forth in the record so much of the evidence as may be requisite to point and elucidate the questions of law.　It is probably for that reason, and possibly for the additional reason that it is difficult to separate the evidence which may, from that which does not have a bearing upon the points of law raised for our determination, that the parties in this cause have spread upon the record a detailed statement of all the testimony adduced by them on a protracted trial before the referees.　It has subjected us to the necessity of giving to the whole an elaborate, and to those not practically acquainted with the trade of a mason necessarily a difficult, examination.　We ought not, however, to regret the labor, if it was requisite to do justice to the parties.

This is one of the cases which are so frequently before our courts on building contracts.　The parties to such contracts apparently differ most widely in reference to their obligations.　The builder seems to suppose that while he adheres generally to the plan which is prescribed for him, he is at liberty to disregard minute and unimportant particulars, while the owner imagines that a departure from such plan in any respect, although it may be the effect of accident, and of no possible injury to him, exon-

erates him from the obligation to make any payment which is in terms made dependant upon the full performance of the contract. Both are wrong. Parties should undoubtedly be exact in the fulfilment of their agreements, even to the smallest particulars, and if they wilfully or carelessly depart from any one of them they should incur the penalty, however severe it may be. But if a party while acting in good faith, and with a determination to do what he has contracted to do, should *unintentionally*, and without any negligence, happen in some trifling and unimportant matter to vary or depart from the terms of his agreement, the law is not so severe and exacting as to deprive him of all compensation. It ever regards the substantial rights of parties, but overlooks trivial and unimportant matters. *De minimis non curat lex.* Were it otherwise no builder, who, as in the case under consideration, makes his compensation dependant upon the full completion of his work, according to a specification containing a vast number of minute directions, could obtain payment for his labor. No builder ever does or can comply with every minute requisition. A brick, a stone, a nail, a shingle or a board may have some slight defect which might have been almost, and perhaps entirely imperceptible, until it had been fixed in its place, and it had become impossible to remove it ; or as I said on the argument, it may happen that a minute portion of mortar among a large mass, may not have been mixed precisely in the required proportions, and the difficulty may not be discovered until it is too late to change it. Such things will constantly occur unless men should become more perfect in their powers of perception and discrimination than they are at present. If there is an honest effort to perform the contract according to the letter, and it is substantially fulfilled, the builder should be entitled to receive the reward of his labor, although he may not (as the architect employed in this case has certified) have in every instance complied with its terms "literally in every punctilio." A substantial compliance, without any intentional variation, should in all cases be considered as a full performance of a condition, whether precedent or subsequent.

Smith *v.* Gugerty.

The work in this case was not completed until long after the time specified for that purpose in the contract. That would be fatal to Gugerty's recovery, unless the extension of time was caused ·by Smith's acts, or was assented to by him. Undoubtedly a party cannot take advantage of the non-performance of a condition, if such non-performance has been caused by himself. (*The Mayor, &c. of New-York* v. *Butler*, 1 *Barb. S. C. R.* 325.) . It seems from the evidence that soon after the commencement of work Smith requested Gugerty to dig and wall a cellar in an old house adjoining the proposed new house. The architect says that "this was not thought of at the time of making the specification. It was a secondary consideration. That Smith, after the specification was done, made a counter cellar under the old building, and that he did not remember hearing any thing about such cellar until after Gugerty commenced his work on the building." He also says that they "increased the thickness of the wall between the old building and the yard of the new." There were also various other additions to the work mentioned in the specifications; all these required additional time. Taking the old and the new work together, Gugerty never agreed to perform the whole within the time specified in the contract. An extension of the work called for and justified an extension of the time. But if there had been no additional labor, the protraction of the time would not, if assented to by Smith, have impaired Gugerty's claim. It is not necessary that the assent should be in writing, or that it should be established by positive testimony. It may be inferred from the circumstances. (*Jewell* v. *Schroeppel*, 4 *Cowen's Rep.* 564, *and cases there cited. Ladue* v. *Seymour and Wood*, 24 *Wend.* 60.) Now in this case there are many circumstances from which such assent may be inferred. The work proceeded after the expiration of the prescribed time (October 20th, 1839) under Smith's own eyes, and superintendence, and often by his express direction. The third and fourth instalments which became due, the third to some extent, and the fourth principally, for work done after that date, were subsequently paid by Mr. Smith. And although the architect was

under examination several times, it nowhere appears that Smith expressed any dissatisfaction at, or was in any way opposed to the delay. If he intended to take advantage of such delay, he should on every account have signified his intention to do so, promptly at the time. It is too late to raise the objection now.

There were unquestionably many variations in the work from the specification which was signed at the same time with the contract. Some portions of the work were omitted. Some were altered; and there were considerable additions. A right was reserved to Smith, in the specification, to require such omissions, alterations and additions, as he might think proper. It appears clearly, from the evidence, that the plans originally drawn were subsequently changed. There is no written evidence as to the extent, or particulars. The architect testified that he drew new plans when they had alterations to make after the buildings were commenced; that in any case where he required an alteration, it was by the direction of Mr. Smith, without which he did nothing. Some of the changes were absolutely necessary. The houses were not set so deep as the specification required; because they came to water sooner by several feet than they anticipated. The cisterns were altered, because, as the architect said, " the line of plot fell short." They altered the plan because the ground was contracted. They were also under the necessity of adding to the thickness of the basement walls to keep out the foul water. Cement was occasionally used for mortar made of lime and sand, which is a cheaper article. And there were many other changes, some from necessity, and some, no doubt, from taste. There is no positive proof that all of them were required by Smith. But from the facts that during the whole period of the work he resided in an adjoining house, and as the architect said, was pretty much all the time on the premises, and himself directed the alterations; and as it nowhere appears that he complained that any were made without his direction or sanction, it is reasonable and right to presume that he ordered or approved of the whole. If he did, there is no reason why he should now

Smith v. Gugerty.

attempt to evade payment on the ground that the work was not done or completed "in strict accordance with the contract, plans and specifications."

It is objected by the plaintiff in error that there was no writing authorizing the extra work, as required by the contract. It is true that there is no positive evidence of the existence of such writing, and as, if there had been any, it would probably have been delivered to Gugerty, it is fair to presume that there was none.  The provision requiring such writing being favorable to Smith, could be waived by him if he chose to do so.  It is not necessary that the waiver should be in writing in order that it should be effectual.  (*Fleming* v. *Gilbert*, 3 *John. Rep.* 528.  1 *Barb. Sup. C. R.* 338.)  Here the evidence is sufficient to prove such waiver by Smith.  He not only gave verbal directions for the performance of the extra work, but when Gugerty objected that the agreement between them required a written order for that purpose, and said that he had done enough without a written agreement, and should do no more, Smith called a witness, and in his presence and in the presence of the architect, said : " Whatever extra work you do for me I will pay you for it."   And the architect said : " Mr. Gugerty that is as good as a written order to you ; and I will see it right to you."  It appears, too, that some of the extra work was done by orders given by Smith and his architect directly to Gugerty's workmen ; and as is inferable from the evidence, without any direction from him.  Besides, although the same clause of the specification provides that Smith might claim a fair valuation for either workmanship or materials, which by a written order he should think proper to have omitted ; yet Smith now claims deductions for omissions of workmanship and materials, without the production or proof of any such written order.  The inference is clear from all this that the parties mutually waived the provision requiring a written memorandum for extra or omitted work.

Another objection raised by the plaintiff in error, is that the certificate of the architect does not state that all the mason work was fully completed according to the contract, and speci-

fication as required by the contract. The answer to that is, that the architect could not so certify, after the changes in the original plan, which had been made by Smith's direction or with his consent. The difficulty had been caused by his own acts. "It is a sound principle," says Judge Thompson, in *Fleming* v. *Gilbert*, (3 *John.* 528,) "that he who prevents a thing being done, shall not avail himself of the non-performance he has occasioned." The certificate actually given was not such as was required by the contract, but the reasons why such certificate could not be granted, and ought not to be required, appear from the evidence, and that distinguishes this case from *Smith* v. *Briggs*, (3 *Denio*, 73.) There the contract and certificate, which related to the same buildings, were the same as those proved in this case, but the question before the court in that case, was simply whether the certificate was sufficient. That arose upon the pleadings, when none of the attending circumstances were stated. Nothing appeared from which the court could infer a waiver.

The report of the referees is general. It does not state what charges of either party were allowed or rejected. They did not reject proof offered to establish any charge. If they had, the question as to the admissibility of the evidence, and the propriety of the charge, would have been proper for the decision of this court. There is nothing to show that the referees erred in either of these particulars.

The testimony relative to the sub-contracts for digging the cellars, which went to show that Gugerty had agreed to give, and had paid, the same price as if they had been of the depth originally proposed, was proper to rebut or reduce the claim for a deduction from the contract price, by reason of the diminution of the work, caused by their reaching the water sooner than was anticipated. It does not appear that Smith gave any order on the subject. And if not, and indeed whether he did or not, he could not claim any deduction when an expense growing out of his miscalculations, and caused by the terms of a contract which he had made, 'had been actually in-

Smith *v.* Gugerty.

curred. If it were otherwise, he could inflict upon another a loss caused by his own error.

It is contended, that the question put to the witness Cavanagh, a house mason, to elicit his opinion whether or not the buildings, if finished by the 20th of October, would have been fit for occupation on the first of November following, was improper. The opinion which the question was intended to elicit, was, as to what would be the probable condition of the walls ; whether they would be sufficiently seasoned. The witness was asked his opinion as an expert. The question is competent and proper, when it relates to a deduction from facts concerning which the witness has a knowledge peculiar to his science, art, or profession, and which is not common to the world. In such cases, the jury are unable to draw a correct conclusion from the facts, and must necessarily rely upon the opinions of those who are better enabled to do so by their professional experience. Now how long it takes to dry the walls of a house, so as to render it fit and safe for human habitation, is not generally known. The requisite knowledge is confined principally, if not wholly, to the class of mechanics to which the witness belonged. That brings it within the rule.

I can see no valid objection to the admissibility of James Sheldon as a witness. He and his partners were sub-contractors under Gugerty, and a part of his claim was for materials furnished by them for the extra work. After their release, their lien on the buildings was at an end, and they had no longer any interest in the claim, and they were fully indemnified against any costs in the suit. The mere fact of the existence of their lien on Smith's house, would not have enabled him to make any deduction until payment.

Upon the whole, I can see no valid objection to the proceedings and determination of the referees, and the judgment of the superior court, confirming them, should be affirmed.

Judgment affirmed.