# COURT OF APPEALS.

## JOSEPH COLWELL, respondent, agt. HERBERT LAWRENCE and WILLIAM FOULKS, appellants.

1. Questions of fact on affirmance below are not properly before this court, and the appellants under the adjudication heretofore made cannot urge that the report of the referee was erroneous as to the facts.

2. It is not ground of reversal because the court (i. e. a referee), who tried the cause below has not found or passed upon matters claimed to be embraced within the issue, in the absence of a request to find upon the particular point.

3. Whether upon a request to find upon issues or questions deemed material, and a refusal to find either way an exception will lie which would be available in this court is yet undecided. (*Per* WOODRUFF, *J.*)

4. Upon a contract bearing date May 28th, 1857, which in terms, required the plaintiff's assignors to build and place on board a steamboat to be furnished by the defendants, two steam engines of the description specified, for the price of $8,000, and to have the same completed ready for steam on or before 15th October next, under a forfeiture of one hundred dollars per day for each and every day after the above date, until the same is completed as above, "the referee found that the work so agreed to be done, was not completed until about the middle of February, 120 days after the day mentioned for its completion, yet he did not allow the $100 per day. In this there was no error, for

1st. The contract declares this provision to be a "forfeiture." It must then be so construed and the parties be deemed to have so intended, unless the agreement plainly indicates the contrary. (*Per* WOODRUFF, *J.*)

2d. The agreement in this case does not clearly indicate the contrary; the forfeit or penalty, as such, was appropriate to compel the plaintiff's assignors to supply or remedy the slightest deficiency, but by no means indicated that a slight defect easily and at small expense supplied, was to be compensated, and more than compensated at $100 per day. (*Per* WOODRUFF, *J.*)

3d. There is sometimes plausible ground for withholding the doctrine of liquidated damages, when the party might be responsible for the whole amount of damages for the breach of an unimportant part of the contract, and so be made to pay a sum by way of damages, grossly disproportionate to the injury sustained. There must be a clear expression of the intent of the parties to warrant the conclusion that the amount named was designated as liquidated damages. (*Per* MILLER, *J.*)

4th. One of the rules of construction is, that the courts are to be governed by the intention of the parties, to be gathered from the language of the contract itself, and from the nature and circumstances of the case. And in all the cases the courts have treated it as a question as to the intention of the parties. (*Per* MILLER, *J.*)

5th. Applying such rules it is hardly to be supposed that the parties intend to fix an amount so extravagant, and which would be if allowed as claimed, so grossly disproportionate to the actual damages as liquidated damages for so trivial, an omission or delay. (*Per* MILLER, *J.*)

6th. The use of the word fofeiture implies that the parties contemplated only a penalty and not liquidated damages. On the trial below a witness called by the plaintiff, was asked to look at the specifications and contract in question and, to tell whether they did not call for connecting the engines in controversy. The witness was allowed to answer the question. The question was a proper one. The witness was an expert and the subject of inquiry was in regard to a matter which was not familiar to the court. The witness looked at the diagram of the engine, the contract and specifications, and gave an opinion t✽explain technical terms in the contract and the meaning of provisions contained in the specifications, which were properly susceptable of explanation in this manner.

7th. It is not competent to explain, vary or alter the effect of a written agreement by parol evidence. Nor is it competent with such a view to inquire into prior or contemporaneous negotiations of the parties.

*March Term*, 1868.

THIS is an appeal from a judgment rendered by the general term of the supreme court held in the first judicial district, affirming the report of a referee. The plaintiff was the assignee of a limited partnership called Birkbecks & Hodges, and as such sued the appellants to recover an amount due for steam engine work.

The plaintiff below claimed balance of a contract job and some extras amounting to $2,064.62, also a bill for alterations and additions made to the same engines $1,283.35. Birkbecks & Hodges on the 28th day of May, 1857, entered into a contract with the appellants to build for the steamboat General Concha two inclined condensing steam engines with boiler and wooden water wheels as per letter of May 8th, 1857, to have the same ready for steam on October 15th, 1857, all for $8,000. In case wrought iron water wheels were adopted then to be an extra charge of $1,250.

The referee found the contract and that Birkbecks & Hodges entered upon the performance of it, by agreement wrought iron water wheels were adopted and extensive alterations made in the work which increased the contract price about $2,200 more. The work was completed in February, 1858. About 26th day of December, 1857, Birkbecks & Hodges and the appellants adjusted the amount due the former for all work done up to that time on the boat in question, at the sum of $1,676.39, after allowing the appel-

ants certain sums for work done by them, the appellants after that adjustment presented the bill so adjusted to their principals for whom they were building the General Concha, collected that money from them and holding it resisted the respondent's claim. The amount received by the appellants was $1,772.85.

After that adjustment the firm of Birkbecks & Hodges did other extra work on the General Concha at the request of the appellants. For this work the plaintiff claimed as extra $1,283, but the referee only allowed $173.35.

The amount of the plaintiff's claim as adjusted on the 26th of December, 1857, after deducting the off-sets of the appellants thereto was $1,676.39.

The amount of extra work as allowed by the referee done after the adjustment on the vessel was $173.35,     $1,849.74.

In his report the referee allowed the appellants a deduction of $781.68, over and above the sum allowed them on the adjustment of the 26th of December, 1857, which sum was composed of some extras done by the appellants for the said Birkbecks & Hodges on the steam boat Virginia, and also composed of damages (such as wharfages, expenses of watchmen, &c.) sustained by the appellants, because Birkbecks & Hodges did not have their work done in the contract time, viz.: October 15th, 1857.

Deducting this $781.68 from the aforesaid sums which he found due to the firm of Birkbecks & Hodges, viz.: $1,849.74 left, the balance of $1,068.06, for which, with interest of report amounting to $1,225.40, he rendered judgment in favor of the plaintiff.

The limited partnership of Birkbecks & Hodges, made an assignment of all their property to the plaintiff, for the general benefit of their creditors, as such assignee plaintiff brought this suit.

In the contract as to the work on the General Concha, was a clause wherein Birkbecks & Hodges bound themselves to complete the work "to the satisfaction of the parties of

the first part" (viz. appellants), or other competent judges and to have the same completed ready for steam, on or before the 15th day of October next" (i. e. 1857), under a forfeiture of one hundred dollars per day for each and every day after the above date, until the same is completed as above.

JAMES CLARK and ALBERT A. NUNEZ, for appellants.

·1st. The referee erred in not awarding damages to the defendants to be recouped or set-off against the plaintiff's demand for the negligent, unskillful and deficient construction of the engines built for the steamer General Concha, and in failing to make any decision of the issue joined in reference to said damages.

2d. In the present case in addition to the warranty implied by law, there was an express warranty contained in the contract. It is admitted by plaintiff in his reply that the letter of may 8th, 1857, constitutes part of the contract under which the engines were built. In this letter Birkbecks & Hodges propose to build for the defendants two inclined condensed steam engines, &c., all complete of the best materials and workmanship, to be unsurpassed by any steam engine of its class, and guaranteed to propel a good model steamboat of the following dimensions, etc.: at a speed of not less than ten miles per hour in slack water.

3d. The referee not only *did not find* (as he should have done) damages in favor of the defendants, *but failed to make any finding on the subject.*

4th. The finding of a referee to whom the decision of a cause is submitted, like the verdict of a jury must respond to all material issues, and if it leave any of them undetermined no valid judgment can be based upon it.

After the referee has made his report it only remains to inquire. 1. Whether he has passed on all the material issues made by the pleadings. 2. Whether the findings are sustained by the evidence. 3. Whether the legal conclusions

are correct. If the referee has erred in any of these particulars, a new trial or other appropriate remedy should be granted. (*Lakin* agt. *N. Y. & Erie Railroad Co.*, 11 *How.* 413.)

5th. It will not do to say that the item of $781.68 found by the referee to be due the defendants, is an award of damages for the negligent and defective construction of the engines.

*a.*) The referee has not so said, and any such inference is sheer conjecture.

(*b.*) It is reasonably certain that this item is the value of the extra work performed by the defendants on the Virginia for which plaintiff admits in his reply, defendants are entitled to a credit.

It is impossible to decide what judgment should have been rendered, unless we determine what the referee has left wholly undetermined.

6th. The stipulation in the contract that the engines were to be completed ready for steam, on or before the 15th day of October next (October, 1857), under a forfeiture of one hundred dollars per day after the above date, until the same is completed as above, liquidated the damages to which defendants were entitled in the event of Birkbecks & Hodges failing to finish the work within the specified time.

It is competent for those who enter into a contract to determine for themselves what shall be the measure of satisfaction for its violation and where a sum is named for that purpose whether it be denoninated a penalty forfeiture or liquidated damages, the agreement will be enforced, regard being had to its true intent and meaning, rather than any technical interpretation of its terms.

(*a.*) Where the defendant bound himself not to practice as a surgeon within seven miles of M. under a penalty of £500, the sum named was held to be liquidated damages. (*Sainter.* agt. *Ferguson* (62 *E. C. L.* 721.)

(*b.*) In *Pearce* agt. *Fuller* (8 *Mass.* 223), the damages

were held to be liquidated though not so named in the bond.

(c.) Where from the nature of a contract the damages resulting from its breach must necessarily be uncertain and difficult to be ascertained, courts will be inclined to construe a clause like that under consideration, as a liquidation of damages rather than a penalty. (*Lange* agt. *Werk*, 22 *Ohio R.*, 2 *O. St. R.*, 519.)

(d.) In *Crisbee* agt. *Bolton* (3 *B. & P.* 240), BEST, *C. J.*, condemns the astuteness of judges in making distinctions to avoid giving effect to agreements liquidating damages, thus endeavoring to make better contracts for parties than they have made for themselves.

(e.) See in addition to the authorities already cited (*Cotheal* agt. *Talmadge*, 5 *Seld.* 551; *Clement* agt. *Cash*, 21 *N. Y. R.* 253; *Pearson* agt. *Williams*, 26 *Wend.* 630; *Dakin* agt. *Williams*, 17 *Wend.* 447; *Reynold* agt. *Bridge*, 37 *Eng. L. and Eq.* 123.)

In the present case the contract does not fix a gross sum to be forfeited in the event of any delay however slight, but fixes a standard of computation by which the damages are estimated according to the continuance of the default.

A consideration which seems to have exercised a controlling influence on the court below, was the fact that the defect in completion might have been trifling and to construe under such circumstances the sum named in the contract as liquidated damages would operate very severely.

The fact seems to have been entirely overlooked that the use of the engines would be as effectually lost, if nearly but not quite completed as it would, had nothing been done upon it.

In the contract between defendants and Peasant Brothers (the parties for whom the former built the vessel for which the engines were intended), it was stipulated that in case the said Messrs. Lawrence & Foulks should not have the boat ready on the 31st of October, 1857, they bind themseleves

to pay to said Messrs. Peasant Brothers the sum of one hundred dollars for each and every day of delay from said date, excepting in case of fire or death.

There can be no question but this provision liquidated the damages for delay between the defendants and the parties to whom they were bound, and it was doubtless in part at least to protect themselves against this liability (which had become absolute before the commencement of the present action), that a similar clause was inserted in the contract between defendants and plaintiffs assignors.

The referee having as matter of fact found, that the said work provided for in the aforesaid contract of 28th of May and letter of 8th May, 1857, was not finished and completed by said Birkbecks & Hodges, until about the middle of February, 1858, he should have found as matter of law, that defendants were entitled to the damages stipulated to be paid in case of such delay.

1. It cannot be fairly argued that the referee has by implication negatived the defendants' right to damages for he expressly finds the facts out of which the right arises.

2. It cannot be claimed that the question of damages entered into the adjustment found by the referee to have been made on the 26th of December, 1858.

(a.) It clearly appears by the report, as well as by the evidence, what matters were embraced in the adjustment, if any was made.

(b.) A portion of the damages accrued after the alleged adjustment.

The pretence that the additional time was consumed by extra work is negatived by the express finding of the referee, that the work provided for in the contract, was not completed by Birkbecks & Hodges till the middle of February, 1858.

The referee erred in sustaining the objection of plaintiff's counsel to the following question put to the witness, William Foulks, one of the defendants.

State what occurred between you and Birkbecks & Hodges or any of them, in reference to the engines and machinery of the Concha and the construction thereof.

This question was ruled out on the ground of the inadmissibility of all evidence of what occurred between the parties, prior to and at the time of making the contract in suit.

*(a.)* The rule which forbids the introduction of explanatory parol evidence, where the parties have made their contract in writing, excludes only parol.evidence of the language of the parties contradicting, varying or adding to that which is contained in the written instrument. The court may always put themselves in the place of the parties, and with this view evidence must be admissible of all the circumstances surrounding the authors of the instrument. Now the question excluded by the referee did no more than call for the attendant facts and circumstances, in the light of which the contract of the parties should have been interpreted and a knowledge of which was essential to enable the referee to put himself in their place. (1 *Green. on Ev.*, §§ 282, 287.)

*(b.)* Parol evidence is admissible to explain a latent ambiguity. Plaintiff's assignors contracted to build two inclined condensing steam engines for use in the propulsion of a vessel. The evidence shows there were two modes of doing this, one with the engines connected by means of a centre shaft, the other with the engines disconnected and left to act independently. On the trial it became a material question, which of these two modes of construction was contemplated. To explain this latent ambiguity parol evidence not only of what occured, but of what was said was clearly admissible. (1 *Green. on Ev.*, § 297, *et seq.*)

Joseph Belknap, a witness for plaintiff, looks at (exhibit) No. 14 and at specification and contract, and says they do not call for connecting engines (taken subject to defendants objection that it is a question of law).

In admitting this evidence the referee erred; the witness was not colled upon to explain as an expert any technical

words or terms of art, employed in the contract, but to construe the contract itself.   (1 *Greenl. on Ev.*, §§ 280, 283.)

DENNIS McMAHON, *for the respondent.*

I. The witness an expert of long standing, looked at the diagram of the engine, also at the contract in suit, and specications, and gave an opinion as an expert, which was admissible under all the authorities.   (*Smith* agt. *Gugerty*, 4 *Barb. S. C. R.* 614; *Rochester &* —— *Railroad* agt. *Budlong*, 10 *How. Pr. R.* 589; *McKee* agt. *Nelson*, 4 *Cow.* 305.)

II. The referee properly disallowed the item of $100 per day of forfeiture.   The words of the contract of the 28th day of May, 1857, exclude the idea that the parties stipulated for the forfeiture of $100 per day, as stipulated damages.   It was intended as a penalty to be held in terrorem over the heads of Birkbecks & Hodges.   Not a word is said by the parties fixing upon that sum, as agreed and liquidated damages; the word forfeiture is used thus, indicating in legal construction a penalty.

None of the cases have gone to the extent of holding that under such language, the whole forfeiture must be imposed. It is only in cases where the parties had expressly stipulated for the imposition of a certain sum as liquidated damages, and then only in those cases wherein it appears that from its peculiar nature it is impossible to arrive at a correct conclusion as to the real amount of the legal damages sustained by the party damnified.   (*Dakin* agt. *Williams*, 17 *Wend. p.* 447.)

See Judge BRONSON's remarks as to his reason for that decision in *Hoag* agt. *McGinnis* (22 *Wend. p.* 165).

In this case the parties agreed to this expression, viz.: And the award of any two of them is to be final between the parties under the penalty of one hundred dollars, to be paid by the defaulting party to the one abiding thereto; this being the stipulated damages agreed upon by and between the said

parties. The court said this is a mere penalty held in terrorem over the head of the defaulting party and not to be favored in law.

To allow the use of penalties as damages at the unlimited discretion of the parties, would lead to the most terrible oppression in pecuniary dealings. The fair and just rights of creditors are worthy of all protection, but no more than the debtor's right to exemption from what is beyond an honest compensation to his creditor.

In *Spear* agt. *Smith* (1 *Den. pp.* 464, 465). The language here was : I, the said Moses Smith, agree to pay to the said William W. Spear, the sum of one hundred dollars as the ascertained and liquidated damages, &c. The court say such words amount to a penalty held in terrorem especially where it appears, that a jury can ascertain with reasonable certainty how much damages the injured party has actually sustained by the non-performance.

*Bagley* agt. *Peddie* (5 *Sandf.* 191), was reversed in 16 *N. Y. Reps.* 469, 473. This was a case where the language used excluded the idea of its being a penalty, viz. : In the sum of $3,000 as liquidated damages, and not by way of penalty or otherwise, and the court put it on the recognized ground that a breach of the principal covenant implied damages so uncertain and difficult to be ascertained, as that the sum named in the bond should be deemed not a penalty, but liquidated damages recoverable upon a breach of any of the covenants, but the court on page 471 lay down the rule second, page 471.

"Where the word penalty is used it is generally conclusive against its being held liquidated damages, however strong the language of other parts of the instrument in favor of such construction." Apply that to this case. Are not the words forfeiture and penalty synonymous ? They are in a case where actual damage might easily be sustained. (*Richards* agt. *Edick*, 17 *Barb.* 260; *Neely* agt. *Nox*, 4 *E. D. Smith*, 220; *Salters* agt. *Ralph*, 15 *Abb.* 273.)

*Lampman* agt. *Cochran* (16 *N. Y. R.*, *p.* 275), was· a case wherein the parties expressly agreed to pay $500 as liquidated damages in case of performance, yet the court held the sum was wrongfully named as liquidated damages, and was in fact only a penalty.

*Clements* agt. *Cash* (21 *N. Y. Reps.* 253), was a case where this language is used (p. 256), which said sum. is hereby mutually agreed by and between said parties to be the ascertained and liquidated damages for such non-performance, and the ·decision is put on the ground that it is competent for the parties to a contract for the purchase of real estate to liquidate and settle by agreement between themselves the amount of damages to be paid upon a breach of the contract instead of leaving such amount to be ascer-tained by a court or jury.

But even then the court say, and when they have settled that compensation neither a court of law nor a court of equity will diminish its amount, unless it be so grossly disproportionate to the actual injury, that a man would start at the bare mention of it (2 *Bos. & Pull.* 351).

It would have been a perversion of principle for the referee in this cause to have held, that the appellants who had not sustained any damages of consequence because of the delay, but had actually collected of Peasant Bros. the price of the labor of B. & H. should fold their arms and be entitled to defend B. & H.'s claim and get judgment against them for $12,500. The referee rejected the forfeiture but allowed the actual damages proven $125 wharfages, and $68 ship keeping; a sum which is excessive, is not to be deemed liquidated damages. (*Dennis* agt. *Cummins*, 3 *Johns.* 297, *followed by Jackson* agt. *Boker*, 2 *Edw.* 471; *Staples* agt. *Parker*, 41 *Barb.* 648.)

The matter in difference between the parties below was whether the engines should have been originally connected at or before the time the appellants accepted her on 17th December, 1857. She was then not so connected. The

expense of doing so by a drag link or chain, would have been trifling, by a centre shaft would, and did cost $950. After the 17th December, 1857, and prior to February, 1858, the firm of Birkbecks & Hodges did connect the two engines by a centre shaft and charged for that work as extra. The referee disallowed it as extra, but found the contract completed in February, 1858, so that on the 17th December, 1857, the appellants waived performance as a condition precedent to recovery, by accepting and clearing the vessel and by adjusting the plaintiff's assignors account; but if by the contract B. & H. were bound to connect the two engines they would have been entitled to a deduction to that extent. The furnishing the drag link or chain a trifling matter, would have connected, them or the making a central shaft which involved less than 10 per cent of the original costs, would have completed the contract according to that construction.

Had the appellants the right after accepting and reducing to use the ship on the 17th December, 1857, to lay by until February, 1858, and then claim the $100 per day. We submit they had not such right. Their proper measure of damages under the circumstances of the case was the sum it would have cost to have connected the engines the expense of wharfage and watching the vessel.

B. & H. did in fact connect the two engines prior to February, 1858, consequently the appellants did not sustain that damage, and in the allowance of $786 of deduction to the appellants by the referee, was included the expense of wharfage $125 and expense of watching $68. If the appellants desired to recover any other damages, they should have alleged and proved them or made some request to the referee to find and excepted to his ruling thereunder.

III. The appellants are not in a condition to raise that forfeiture question on this appeal.

Treating the disallowance of it as a question of fact or even mixed of fact and law, the affirmance by the general term of the referee's report is conclusive on this court, as it cannot

investigate questions of fact on appeal, except in the mode pointed out in the Code, which is on reversals of judgments of referees by the general term on questions of fact.

Treating the disallowance of it as a question of law, the appellants cannot raise it here as they have no where raised it on the case made. No request was made to the referee to rule on this point; no request for him to find on it as a matter of law, no exception taken on the trial to it, no evidence offered in support of it rejected, no motion to dismiss made, no specific exception to the findings of the referee, because of his disallowing that item. The exceptions filed to the report are of the most general nature.

IV. On this appeal the appellants cannot urge that the report of the referee was erroneous on the facts, questions of fact on affirmance below, are not properly before this court on appeal. (*Metcalf* agt. *Mattison*, 32 *N. Y. R.* 464; *Doty* agt. *Carolus*, 31 *N. Y. R.* 547; *Wilcox* agt. *Hawley*, 31 *N. Y. R.* 648; *Peterson* agt. *Rawson*, 34 *N. Y. R.* 370.)

*By the court*, MILLER, J. It is insisted that the referee erred in not awarding damages to the defendants by way of recoupment or set off to the plaintiff's demand for the negligent and unskillful construction of the engines built, and in failing to make a decision upon the issue joined in reference to said damages.

The referee has made no special finding as to this claim, and there is no request to make any such finding, but he allowed an off-set of $781.68 to the defendants. It does not appear of what item this amount is composed, nor is it very material in my opinion, as the evidence as to the amount of the defendants' set-off included this claim for damages was conflicting and presented questions of fact for the consideration of the referee, which he has disposed of in his decision, and with which we are not at liberty to interfere. Questions of fact on affirmance below are not properly before this court, and the appellants under the adjudications heretofore made

cannot urge that the report of the referee was erroneous as to the facts (*Metcalf* agt. *Mattison*, 32 *N. Y. R.* 464; *Doty* agt. *Carolus*, 31 *N. Y. R.* 547; *Wilcox* agt. *Hawley*, 31 *N. Y. R.* 648; *Peterson* agt. *Rawson*, 34 *N. Y. R.* 370.)

No exception was taken to the ruling of the referee admitting the question put to one of the witnesses; whether the specification called for connecting the engines by a centre shaft. I think, however, that the question was a proper one. The witness was an expert and the subject of inquiry was in regard to a matter which was not familiar to the court. He looked at the diagram of the engine, the contract and specifications, and gave an opinion to explain technical terms in the contract and the meaning of the provisions contained in the specifications which were properly susceptible of explanation in this manner, such evidence, I think, was clearly admissible. (*Smith* agt. *Gugerty*, 4 *Barb.* 614; *The R. & S. Railroad Co.* agt. *Budlong*, 10 *How.* 289; *Curtis* agt. *Gano*, 22 *N. Y. R.* 426.)

I also think that the referee properly excluded evidence of what occurred between the parties prior to and at the time of making the contract. The rule is well settled, that all conversations had prior to the execution of a written instrument become merged in the instrument when executed. There was nothing in the offer to show that the testimony was intended to explain what was otherwise obscure or unintelligible, and that such explanation was not inconsistent with the written contract ( 1 *Gr. Ev.*, § 282), nor that the facts and circumstances under which the contract was made would give any light in the interpretation of the instrument. (1 *Gr. Ev.*, § 287). Neither was it offered to explain a latent ambiguity (*id.* 297). If the evidence was in any respect admissible, and the referee erred in excluding it, I am inclined to think that the difficuly was obviated by the withdrawal afterwards on the part of the plaintiff, of all objections to testimony of a similar character which was offered by the defendants.

It is further insisted by the defendants' counsel, that the stipulation in the contract to the effect that the engines were to be completed and ready on or before the fifteenth day of October, 1857, under a forfeiture of one hundred dollars a day after the above day, until they were completed, which was on the 14th day of February, afterwards provided for liquidated damages, and the referee erred in not allowing those damages at the rate of one hundred dollars per day. A point is taken by the plaintiff's counsel, that the appellants are not in condition to raise this question of damages on this appeal, because as a question of fact the affirmance of the referee's report by the general term is conclusive, and as a question of law, no request was made to the referee to rule on this point or to find as a matter of law, and no specific exception was taken to the finding of the referee for disallowing this item. Without discussing the validity of these objections, I am of the opinion that this was not a case for the allowance of the forfeiture named in the contract as liquidated damages.

The question whether such damages as are stipulated in the gross amount fixed for a failure to perform a contract, is in the nature of a penalty, is one of considerable difficulty, and the authorities upon the subject are replete with contradictions.

It is not necessary to review the various cases where the question is discussed, and it is enough to refer briefly to some of the principles by which cases of this character are to be determined. One of the rules of construction established is, that the courts are to be governed by the intention of the parties to be gathered from the language of the contract itself, and from the nature and circumstances of the case (*Cotheal* agt. *Talmadge,* 5 *Seld.* 554; *Crisdee* agt. *Bolton,* 3 *Car. and P.* 240), and in all the cases the courts have treated it as a question as to the intention of the parties. (*Reynolds* agt. *Bridge,* 37 *Eng. L. and Eq.* 130.) Having in view this rule it is scarcely to be supposed that the parties intended

to fix an amount so extravagant and which would be if allowed as claimed, so grossly disproportionate to the actual damages as liquidated damages, for so trivial an omission or delay and I cannot discover any sufficient and satisfactory reason for any such inference or conclusion; nor is any such intention to be presumed upon the hypothesis that the damages resulting from a breach of this contract would be of such an uncertain amount as to be incapable of proof, and that it would be difficult to show the nature of the injury caused and the actual damages arising from the delay.

It may also be observed that the language of the contract itself militates against any such theory. Not a single word is said about liquidated damages, and the word forfeiture, which is equivalent to a penalty is used, which manifests that a penalty was intended. Nor should it be overlooked that many of the cases decided sustain the doctrine that even where the term liquidated damages is incorporated in the instrument, the gross amount fixed is in the nature of a penalty. (*Hoag* agt. *McGinnis*, 22 *Wend.* 165 ; *Spear* agt. *Smith*, 1 *Den.* 454; *Bagley* agt. *Peddie*, 16 *N. Y. R.* 469 ; *Lampman* agt. *Cochran*, 16 *Id.* 275 ; *Staples* agt. *Parker*, 41 *Barb.* 648.)

Another view may also be invoked, and I think is applicable to the present case, and that is, that there is sometimes plausible ground for withholding the doctrine of liquidated damages, when the party might be responsible for the whole amount of damages for the breach of an unimportant part of a contract, and so be made to pay a sum by way of damages grossly disproportionate to the injury sustained (5 *Seld.* 557, *before cited; Clement* agt. *Cash*, 12 *N. Y. R.* 253). Looking then at this provision of the contract as it stands, with all the difficulties in the way of its construction, with which the numerous authorities on the subject invest it, and considering the severe consequences which would accrue from a strict and rigid enforcement of its conditions, and with very much to show a different intention, I am constrained

to hold that there is not such a clear expression of the intent of
the parties as would warrant the conclusion that the amount
named was designed as liquidated damages.

The views I have expressed dispose of all the questions
presented, and the judgment of the general term must be
affirmed.

WOODRUFF, J.  The only exception which appears to have
been taken by the appellants to the ruling of the referee in
receiving or rejecting evidence, was to his sustaining the
plaintiff's objections to proof of the oral negotiations and con-
versations between the parties prior to, and at the time of
the making of the contract in suit.  The rule is too familiar
to be questioned that it is not competant to alter, vary or
affect the obligations created by a written agreement by evi-
dence of cotemporaneous or prior negotiations of the parties.
The questions which were objected to called for all that took
place.  In every possible view of the subject such a question
was properly excluded.

If it had been proposed to show a distinct collateral agree-
ment not embraced in the terms of the contract, a different
question would arise, but there was no such claim or pre-
tence.  If the terms of the agreement were ambiguous in
their application to the subject matter, it might be competent
to show what was before the minds of the parties, but no
such ambiguity existed.  The terms of the written agree-
ment prescribed certain particulars, and in respect to what
was not specified.  The engines agreed to be built were to
be unsurpassed by any steamboat engines of their class, and
guaranteed to propel a boat of dimensions stated, at a speed
mentioned.  It is clear that except in the particulars stated
the details of the construction were left to the judgment of
the builders, and no evidence of parol agreements inconsistent
with this was admissible.  But there is in truth no founda-
tion whatever for the exception.  The plaintiff's counsel
withdrew his objections, and the witness testified at great

length to his interviews with the plaintiffs, and what took place between them from the moment when the proposition to build was first made, down to the time when the steamboat went to Havana. The other exceptions are chiefly addressed to the findings of fact which are not the subject of review in this court in the form presented by the present case. Had the supreme court deemed it their duty to reverse the judgment upon questions of fact, and so stated in the order of reversal, the present law gives this court jurisdiction to review such questions. The appellant's counsel in his argument has taken a much wider range, and asks us to reverse because the referee has not found or passed upon various matters which he claims were in issue. If he desires a more full or specified finding he should have required it, and if necessary have sought the aid of the court below to that end. It is not within the jurisdiction of this court to examine the case except upon the facts found, and if there was no error in law committed, assuming the facts to be as found by the referee, we have no other alternative but to affirm the judgment. Whether upon a request to find upon issues or questions deemed material, and a refusal by the referee to find either way an exception will lie which would be available in this court, was left undecided in *Grant* agt. *Morse* (22 *N. Y. R.* 323), and the question does not arise here, for the case does not show that the appellant desired or has in any manner sought or requested any other or further findings than are contained in the report of the referee. Upon the facts found the conclusions of law stated by the referee are inevitable, unless as matter of law it be true that it appears by such findings that the defendants were entitled to be allowed $100 per day as liquidatated damages for the contractors' delay in completing the engines contracted for so far as necessary to extinguish all clams by the plaintiff's assignors. The contract bore date May 28, 1857, and in terms required the plaintiff's assignors to build and place on board a steamboat to be furnished by the defendants, two

steam engines of the description specified, for the price of $8,000, "and to have the same completed ready for steam, on or before the 15th of October next, under a forfeiture of $100 per day for each and every day after the above date until the same is completed as above." The referee has· found that the work so agreed to be done was not completed until about the middle of February, 1856, 120 days after the day mentioned for its completion. It does not appear by any distinct specification in the referee's report whether he allowed anything to the defendants for damages by reason of the delay, or whether any damages were proved by them to have been sustained. The proper inference is that if any were proved they were allowed.

But it is quite clear that $100 per day or $12,000, were not allowed, else it would have extinguished all claims by the plaintiff. I think that in this there is no error. First: The contract declares this provision to be a "forfeiture." It must then be so construed and the parties be deemed to have so intended, unless the agreement plainly indicates the contrary. The general rule requires that what the parties themselves prescribed as a forfeiture shall be so treated. The agreement in this case does not clearly indicate the contrary. The engines were to be built and put up complete, to the satis-faction of the defendants or other competent judges. The forfeit or penalty as such, was appropriate to compel the plaintiffs to supply or remedy the slightest deficiency, but by no means indicated that a slight defect easily and at small expense supplied, was to be compensated and no more than compensated at $100 per day. Second: The report of the referee shows that the parties themselves either treated this provision of the contract as not providing a sum certain as liquidated damages, or for reasons satisfactory to themselves varied performance according to the letter of the contract. On the 27th of December, seventy-two days after the expiration of the term limited by the contract for the completion of the work, they adjusted the amount due to the assignors

of the plaintiff at $9,676.34, recognizing the rights of the contractors notwithstanding the delay, to the full contract price, and to payment for extra work beyond that price. This plainly indicated either that the sum mentioned as a forfeiture was a mere penalty, and the delay was without actual damage to the defendants, or that such penalty or forfeiture had been waived by reason of alteration or extra work. Third: If the question whether the $100 per day was intended by the parties as liquidated damages or a penalty, depended upon facts extrinsic to the contract itself, as upon the relation of the defendants to the subject, their possible engagements to other parties, the value of the use of the completed engines, or other circumstances known to the parties when the contract was made, and in view of which the agreement was entered into, these were subjects of proof on the trial, and the finding of the referee so far as it could properly be affected by such cirumstances, must be regarded as a finding of facts and conclusive. It is a matter of some satisfaction to me (though not within our province to investigate, because a mere question of fact), that the defendants appear by the evidence to have collected from the party by whom they were employed to build the steamboat, the whole bill, and even more than has been awarded to the plaintiffs in the action. The judgment should be affirmed  All the judges concurred.