THE IROQUOIS FURNACE COMPANY

*v.*

THE WILKIN MANUFACTURING COMPANY.

*Opinion filed October 19, 1899.*

1. APPEALS AND ERRORS—*effect where case is tried on mistaken theory of law.* A judgment will be reversed and the case sent back for new trial where it was tried upon an erroneous or mistaken theory of law.

2. ATTACHMENT—*objections to form of affidavit should be made below.* An objection to an amendable defect in an attachment affidavit comes too late when first raised in the appellate tribunal.

3. SAME—*when statement of non-residence in affidavit is sufficient.* An affidavit for attachment on the ground of the non-residence of the defendant corporation is sufficient, where it alleges, in conformity with section 1 of the Attachment act, that the defendant is not a resident of the State, and further shows that its residence is in a certain city in a designated State, although it fails to aver that the defendant was chartered in the State of its alleged residence.

4. SAME—*when notice of publication in attachment is sufficient to confer jurisdiction.* In an attachment suit a notice of publication, whereby the defendant is required to appear at the next term of court, erroneously stated to be the third Monday of August instead of the third Monday of September, is sufficient to confer jurisdiction upon the court, although it requires the defendant's appearance prior to the commencement of the suit the date of which is stated in the notice, since the mistake is apparent, and the defendant is presumed to know when, under the law, the next term begins.

5. SAME—*when alleged defect in bond does not go to jurisdiction.* That an attachment bond, in a suit by a partnership, was signed by only one partner as principal does not go to the jurisdiction of the court, and cannot be urged on appeal by the garnishee in a collateral attack upon the judgment rendered in the attachment proceeding, when the objection was not raised in the court below.

6. GARNISHMENT—*extent to which garnishee may attack a judgment against attachment defendant.* A garnishee, against whom judgment has been rendered in an attachment suit, cannot complain of mere irregularities in the antecedent proceedings or the judgment against the attachment defendant, but may attack their validity on the ground that the court was without jurisdiction.

7. SALES—*warranty of quality and fitness by a manufacturer—effect.* A manufacturer who proposes, in accordance with specifications prepared by him, to furnish a purchaser blowing engines guaranteed to be of the best material and workmanship and to be equal or superior to any blowing engine on the market, undertakes that

they shall be equal, for the purpose and design for which a blowing engine is intended, to any other engine on the market, whether constructed according to the same specifications or not.

8. EVIDENCE—*evidence of breach of warranty is competent though the article has been received and used.* It is competent for a purchaser of engines, although he has received and used them, to show, by way of recoupment, that they were not constructed according to the contract or are unsuitable for the purpose intended.

9. CONSTRUCTION—*when recitals in agreement may be given force.* Recitals in an agreement may be given force when referred to in the operative part of the instrument in such a way as to show that they were designed to form a part of it.

10. DAMAGES—*term "penalty" prima facie excludes idea of stipulated damages.* The word "penalty" *prima facie* excludes the notion of stipulated damages, although the use of either the word "penalty" or the words "liquidated damages" is not conclusive.

11. SAME—*sum named as damages is a penalty if contract is uncertain.* A sum named in an agreement as damages for its breach will be construed as a penalty when the terms of the contract are indefinite and uncertain.

12. SAME—*when sum named in contract is a penalty and not liquidated damages.* In a contract where a sum of money is made payable in gross for a breach of any of its stipulations, which are of various degrees of importance, and as to some of which the damages might be considered liquidated whilst the damages for the non-performance of the others are not measurable by any exact pecuniary standard, such sum is a penalty only, and not liquidated damages.

13. SAME—*sum greatly exceeding actual damages is a penalty.* An amount agreed to be paid in case of delay in the delivery of machinery to be manufactured for a purchaser will be treated as a penalty where it greatly exceeds the actual damages suffered by the purchaser on account of the delay.

*Iroquois Furnace Co.* v. *Wilkin Manf. Co.* 77 Ill. App. 59, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

This is a proceeding by attachment, commenced on August 28, 1891, by Pickands, Brown & Co. against the Wilkin Manufacturing Company. The attachment writ, which was issued August 28, 1891, was made returnable September 21, 1891. The affidavit alleged that the ap-

pellee, the Wilkin Manufacturing Company, was indebted to the plaintiffs, Pickands, Brown & Co., in the sum of $1035.32 for goods sold and delivered. .The sheriff made return, that no property of the defendant was found in his county, and that he had served the writ on the appellant, the Iroquois Manufacturing Company, as garnishee.

The declaration contains the common counts only. The interrogatories to the garnishee required it to state, whether the defendant was furnishing material, or doing work in pursuance of any contract between the defendant and the garnishee. The garnishee, who is the appellant here, answered, stating that the appellee, the Wilkin Manufacturing Company, had furnished material in pursuance of the contract hereinafter described; that the appellant had paid $12,750.00 of the purchase money for the engines named in the contract, and had off-sets and claims for damages against the balance; that the Wilkin company had assigned its claim to John Featherstone's Sons, of which the garnishee had notice; that William Bayley & Sons had filed a bill to enforce a sub-contractor's lien on account of material furnished for the engines; that other attachment suits had been sued out, and laid in the hands of the garnishee; and that one John Barth claimed the moneys, if any, due on account of said contract, by virtue of an assignment made to him by the Wilkin company. The answer of the appellant garnishee further stated, that the engines referred to in the contract were partially shipped from Milwaukee about the third days of July and August, 1891, respectively; and the final working parts came into the possession of the garnishee about September 13, 1891.

John Featherstone's Sons filed an interplea, and set up an assignment from the Wilkin Manufacturing Company to them dated June 9, 1891, covering the moneys due or to become due on account of said contract.

John Barth also filed an interplea, setting up a claim to all moneys from the appellant garnishee by virtue of

an assignment for the benefit of creditors, made by the Wilkin company to him, dated August 18, 1891.

The attaching plaintiffs filed an unsworn replication, traversing the answer of the garnishee. They also traversed the interpleas of John Featherstone's Sons and John Barth.

By agreement of the parties, a jury was waived, and the cause was tried before the court without a jury. The trial court found the issues in favor of the plaintiffs, and that, at the date of the service of the writ, the garnishee, the present appellant, was indebted to the appellee, the Wilkin Manufacturing Company, the defendant in the attachment proceeding, in the sum of $12,250.00. The garnishee excepted to the finding of the court, and moved for a new trial. The exceptions and motion were overruled. Thereupon, the court rendered judgment, ordering that the appellee, the Wilkin Manufacturing Company, recover from the appellant, the Iroquois Furnace Company, the garnishee, the sum of $12,250.00, $1035.32 thereof for the use of the attaching plaintiffs, Pickands, Brown & Co.; $6649.25 thereof for the use of John Featherstone's Sons; and $4565.43 for the use of John Barth, assignee, and that the appellee should have execution therefor for said uses.

The garnishee, the Iroquois Furnace Company, took an appeal from the judgment, so entered, to the Appellate Court, where the judgment was affirmed. The present appeal is prosecuted from the judgment of affirmance, entered by the Appellate Court.

The contract between the appellee, the Wilkin Manufacturing Company, and the appellant, the Iroquois Furnace Company, consisted of certain letters and specifications, which were offered in evidence. The contract was embodied in a letter, written by the Wilkin Manufacturing Company to one Eagle, the president of the Furnace company, dated July 2, 1890, and a letter in reply thereto, dated July 5, 1890, written by said president, accepting the proposition contained in appellee's letter.

The letter of July 2, 1890, is as follows: "We propose to furnish you two blowing engines complete, as per specification enclosed, for twenty-eight thousand dollars ($28,000.00) f. o. b. cars at South Chicago. We send a man to superintend the erection and start the engines; we to pay his time, you his traveling expenses and board. The first engine to be delivered six months from date of order, the second, one month after the first one. We guarantee all these to be of the best material and workmanship and to be equal or superior to any blowing engine on the market. Payments to be made as follows: Fifty per cent on shipment, the balance when the engines are in successful operation and fulfill our guaranty. For first deferred payment we will accept your ninety days' note. In consideration of the prompt acceptance of the proposition we will discount the above price two thousand five hundred dollars ($2500.00), making the net amount twenty-five thousand five hundred dollars ($25,500.00) for the two engines.  Of this discount of two thousand five hundred dollars ($2500.00), one-half to be deducted from the cash payment and one-half from the deferred payment. Specification was enclosed in ours of June 24."

The letter of July 5, 1890, is as follows:  "We accept the proposition contained in your favor of July 2, and attach to it the specifications enclosed in yours of June 24. Please hurry the two engines, and we trust you will not be as long in building them as the proposition calls for."

The specifications accompany the letters, and are set out in full in the record.

The parties also made a supplemental contract, which is as follows:

"Whereas, the Wilkin Manufacturing Company of Milwaukee has agreed to manufacture and deliver to Iroquois Furnace Company at Chicago two certain engines, of the character, for the price and at the time stated in the written contract heretofore made between the parties; and whereas, it has been agreed that no damage will be

sustained by said purchaser if said engines are not delivered as soon as the times limited therefor by said contract, unless the delay beyond such times exceeds the time hereinafter mentioned; and whereas, said purchaser is desirous that said contract shall contain a penalty, in the nature of stipulated damages, to be paid by said Wilkin Manufacturing Company if said company shall fail to furnish the said engines at the time hereinafter provided:

"Now, therefore, in consideration of the mutual covenants herein made, said Iroquois Furnace Company does extend the time for delivery of said engines, and does agree that if the same shall be delivered as follows: the first on or before April 1, 1891, and the second on or before May 1, 1891, then such delivery shall be construed as full compliance with said contract, so far as the time of delivery is concerned. And said the Wilkin Manufacturing Company on its part agrees, in consideration of the said extension of time, that it will deliver the said engines at the expiration of said respective dates, and that it will pay to said Iroquois Furnace Company, as liquidated damages for any delay which shall ensue after said first of April, as to the first engine, and after the first of May as to the second engine, the sum of $50.00 per day for all time which the delivery of said engines shall be delayed after May 1, 1891."

Defrees, Brace & Ritter, for appellant:

The supplemental record discloses that no attachment bond sufficient in law was filed in the cause, and in such case the attachment is declared by statute to be illegal and void. Starr & Cur. Stat. chap. 11; sec. 4; *Tedrick* v. *Wells*, 152 Ill. 214; *Carson* v. *Merle*, 3 Scam. 169; *Hileman* v. *Beale*, 115 Ill. 355.

The defects in the attachment proceedings above pointed out are jurisdictional, and may be taken advantage of by the garnishee on appeal from the judgment entered against it as such. *Pierce* v. *Carleton*, 12 Ill. 358;

*Thormeyer* v. *Sisson,* 83 id. 188; *Dennison* v. *Taylor,* 142 id. 45; *Haywood* v. *McCrory,* 33 id. 459; *Haywood* v. *Collins,* 60 id. 328; *Firebaugh* v. *Hall,* 63 id. 81; *Kirk* v. *Dearth Agency,* 171 id. 207.

The residence or non-residence of a corporation is a question of law and not a question of fact, and the facts should be set forth in the affidavit for attachment, from which the court can draw the conclusion of law which justifies the issuance of the writ, otherwise the affidavit is void. *Railroad Co.* v. *Keep,* 22 Ill. 9; *Wells* v. *Parrott,* 43 Ill. App. 656; *Merrick* v. *VanSantvoord,* 34 N. Y. 208; Am. & Eng. Ency. of Law, 330; *Railroad Co.* v. *Glenn,* 28 Md. 287; *Insurance Co.* v. *Francis,* 11 Wall. 210; *State Treasurer* v. *Auditor,* 46 Mich. 224; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Holbrook* v. *Ford,* 153 Ill. 633.

The court tried the case upon an erroneous theory of law respecting the construction, force and effect of the contract, and therefore the judgment should be reversed and the case sent back for a new trial. *Bright* v. *Kenefick,* 69 Ill. App. 43; *Kimball* v. *Doggett,* 62 id. 528.

A contract to manufacture a boiler which shall be as durable as any "now in use" is good and enforcible. *Insurance Co.* v. *Morgan,* 22 Ill. App. 198.

An agreement that a machine shall do as good work as any other machine "in the market" is valid and enforcible. *Aultman* v. *Weber,* 28 Ill. App. 92.

ARTHUR HUMPHREY, KNIGHT & BROWN, WINKLER, FLANDERS, SMITH, BOTTUM & VILAS, and CRATTY, JARVIS & CLEVELAND, for appellee:

The attachment affidavit follows the language of the statute and is amply sufficient. *Zeigler* v. *Cox,* 63 Ill. 48; *Keith & Co.* v. *McDonald,* 31 Ill. App. 17.

The objection to the affidavit, even if it were good, comes too late. It should have been made in the trial court, where the defect, if any existed, could have been cured by amendment. Rev. Stat. chap. 11, sec. 28; *Kruse*

v. *Wilson,* 79 Ill. 233; *Railway Co.* v. *Radbourn,* 52 Ill. App. 203; *Campbell* v. *Whetstone,* 3 Scam. 361; *Bickerdike* v. *Allen,* 152 Ill. 95; *Ellis* v. *Galesburg Base Ball Ass.* 45 Ill. App. 279; *Lawver* v. *Langhans,* 85 Ill. 138; *Hogue* v. *Corbit,* 156 id. 540; *Zeigler* v. *Cox,* 63 id. 48; *Moore* v. *Mauck,* 79 id. 391; *Gordon* v. *Bank,* 144 U. S. 97.

The bond for attachment is in due form, and sufficient. No objections having been made as to its form or sufficiency in the trial or Appellate Courts, such objections cannot be made here. *Black Hills Merc. Co.* v. *Gardiner,* 57 N. W. Rep. 557; *Shakman* v. *Koch,* 67 id. 925; *Austin* v. *Goodbar,* 30 S. W. Rep. 888; *Morris* v. *Trustees,* 15 Ill. 266; *Lawver* v. *Langhans,* 85 id. 138.

The unnecessary and insensible statement in the publication notice that the return term of the court began on a day previous to the commencement of the suit is at most a mere irregularity, of which appellant, as garnishee, cannot take advantage. Waples on Attachment, 269, 273; *Rogers* v. *Miller,* 4 Scam. 333; *Forsythe* v. *Warren,* 62 Ill. 68; *Goudy* v. *Hall,* 36 id. 313; *Clark* v. *Marfield,* 72 id. 258; *Michael* v. *Mace,* 137 id. 485; *Iron* v. *Keystone Manf. Co.* 61 Iowa, 406; *Kelly* v. *Harrison,* 12 So. Rep. 261; *Davis* v. *McCary,* 13 id. 665; *Johnson* v. *Clark,* 18 Kan. 157; *Marshall* v. *Marshall,* 13 S. W. Rep. 578; *Kirk* v. *Dearth Agency,* 68 Ill. App. 468; 171 Ill. 201.

The measure of damages in this case is plain. It is the value of the use of the engines,—namely, their rental value,—for the time of delay, or, if there was no rental value, the interest upon the amount invested.   5 Am. & Eng. Ency. of Law, 25; *Ice Co.* v. *Jenkins,* 58 Ill. App. 519; *Insurance Co.* v. *Morgan,* 22 id. 198; *Benton* v. *Fay & Co.* 64 Ill. 417; *Phelan* v. *Andrews,* 52 id. 486; *Strong* v. *Cogswell,* 28 id. 457; *VanBuren* v. *Diggs,* 11 How. 462.

Delivery, receipt, use and retention of a machine under a contract shows, *prima facie,* it complies with the contract. *Babcock* v. *Trice,* 18 Ill. 420; *Underwood* v. *Wolf,* 131 id. 425.

. Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appeal in this case is prosecuted by a garnishee, against whom judgment has been rendered in an attachment proceeding.

*First*—Appellant claims, that the judgment rendered against it in the attachment proceeding is void for want of jurisdiction in the court rendering it. In an attachment proceeding, the court must acquire jurisdiction over the defendant, and proceed to render judgment against him, before it pronounces judgment against a party who is summoned as a garnishee. The garnishee cannot complain of mere irregularities in the attachment proceeding or judgment, as these affect the attachment defendant only, and must be called in question by him in a direct proceeding. But, if the judgment rendered in the attachment suit is unauthorized and void the judgment against the garnishee has no legal basis for its support. Consequently, it has been held that a garnishee will be permitted to inquire into the validity of the antecedent proceedings, and, if they are void, the judgment against himself will be reversed. This rule rests upon the principle, that the garnishee would not be protected in the payment of a judgment entered by a court, which had no jurisdiction to render it. (*Pierce* v. *Carleton*, 12 Ill. 358; *Kirk* v. *Elmer Dearth Agency*, 171 id. 207).

It becomes necessary, therefore, to inquire whether the judgment, rendered in favor of the attachment creditors, Pickands, Brown & Co., against the appellee, was or was not void for want of jurisdiction in the court rendering it. The appellant attacks the judgment upon three grounds: *First*, upon the alleged insufficiency of the attachment affidavit; *second*, upon the alleged insufficiency of the attachment bond; and, *third*, upon the alleged defectiveness of the publication notice in the attachment proceeding.

The ground, upon which the attachment, was issued, was the non-residence of the defendant; and the attachment affidavit is said to be defective, because it does not set up facts, showing the non-residence of the defendant. The defendant in the attachment proceeding is a corporation, viz., the Wilkin Manufacturing Company. The allegation of the affidavit is, that the defendant "is not a resident of this State, and that its place of residence is at Milwaukee in the State of Wisconsin." The contention of appellant is, that a corporation cannot have a residence elsewhere than in the State, which creates it or grants to it its charter; and that, therefore, the allegation in the affidavit should have been, that the appellee corporation was chartered or incorporated by the State of Wisconsin, and not by the State of Illinois.

Section 1 of the Attachment act, provides, that a creditor may have an attachment against the property of his debtor in any one of the following cases: "*First,* where the debtor is not a resident of this State." Here, the language of the affidavit conforms literally to the language . of the statute; and, therefore, the language of the affidavit is sufficient. (*Zeigler* v. *Cox,* 63 Ill. 48; *Keith & Co.* v. *McDonald,* 31 Ill. App. 17). Where one proceeds under a statute, and uses the language of the statute in his pleadings, such pleadings, as a general thing, will be sufficient. It may be conceded to be true that the residence of a corporation is in the State which grants its charter, but the affidavit here is sufficient to embrace such a definition of its residence. The allegation, that the defendant is not a resident of this State, and that its place of residence is at Milwaukee in the State of Wisconsin, includes and is equivalent to an allegation, that it was chartered in the State of Wisconsin. The statute does not require the statement in an affidavit for attachment of the facts constituting non-residence.

Even, however, if the affidavit is defective in the respect thus indicated, it is too late to make the objection

to it here, as no such objection was made in the trial
court.    Section 28 of the Attachment act provides, that
"no writ of attachment shall be quashed, nor the property
taken thereon restored, nor any garnishee discharged, nor
any bond by him canceled, nor any rule entered against
the sheriff discharged, on account of any insufficiency of
the original affidavit, writ of attachment or attachment
bond, if the plaintiff or some credible person for him shall
cause a legal and sufficient affidavit or attachment bond
to be filed, or the writ to be amended in such time and
manner as the court shall direct, and in that event the
cause shall proceed as if such proceedings had originally
been sufficient." (1 Starr & Cur. Ann. Stat. p. 322).    In
view of section 28, it is immaterial how defective the
affidavit may be originally, if the plaintiff causes a legal
and sufficient affidavit to be filed.    If the affidavit had been
attacked in the trial court, it could have been amended
there under section 28; and, if amendable there, it cannot
be said to be void.    What is amendable is not void.    As
the validity of the attachment writ depended upon the
validity of the affidavit, and the affidavit was voidable
merely and not void, the court had jurisdiction over the
subject matter of the attachment; and the defect here
insisted upon cannot avail the appellant in this collateral
proceeding.    (*Campbell* v. *Whetstone,* 3 Scam. 361; *Kruse* v.
*Wilson,* 79 Ill. 233; *Bickerdike* v. *Allen,* 157 id. 95; *Lawver* v.
*Langhans,* 85 id. 138; *Zeigler* v. *Cox,* 63 id. 48; *Hogue* v. *Cor-
bit,* 156 id. 540).    The objection here made to the affidavit
is based upon a mere irregularity and was not made in
the trial court, but was raised for the first time in the
Appellate Court.    The objection came too late.

The attachment bond is objected to, on the ground
that it purports to be the bond of Henry S. Pickands
alone, and not the bond of the several persons, compos-
ing the firm of Pickands, Brown & Co.    This objection
was not made in the circuit court, and it is too late to
make it here for the reasons already stated in regard to

the affidavit. Section 28 provides, that no writ of attachment shall be quashed on account of any insufficiency of the attachment bond, if a legal and sufficient bond is filed. If the bond had been objected to in the trial court upon the ground here stated, a new bond could have been filed. Section 4 of the Attachment act provides, that "the clerk shall take bond and sufficient security payable to the defendant, against whom the writ is to be issued," etc. There is here no absolute requirement, that the attachment bond shall be signed by all the plaintiffs. The present bond recites, that Henry S. Pickands has prayed an attachment at the suit of Pickands, Brown & Co. against the Wilkin Manufacturing Company. It is true, that, by the terms of said section 4, "every attachment issued without a bond and affidavit taken is hereby declared illegal and void, and shall be dismissed." But the attachment in the present case was not issued without a bond. On the contrary, the bond was given, and, if it was defective because signed by only one of the attachment plaintiffs as principal, instead of being signed by them all, attention should have been called to the matter in the trial court. The defect is not one, which goes to the jurisdiction, so as to justify the garnishee in urging it against the judgment. (*Morris* v. *Trustees of Schools*, 15 Ill. 266). In *Morris* v. *Trustees of Schools, supra,* we said (p. 268): "It is assigned for error that the bond was defective, because not executed by the plaintiffs in attachment. Such an objection cannot be made for the first time in this court. The statute provides that no attachment shall be dismissed for any insufficiency of the bond, if the plaintiff will cause a sufficient bond to be filed. The objection should have been made in the court below, and an opportunity afforded plaintiffs to obviate it by giving another bond. Unless made and overruled in that court, it cannot be insisted on here."

The objection made to the publication notice is of a more serious character; but we are inclined to the opin-

181—38

ion, that it cannot be sustained in this collateral attack, made by the garnishee upon the judgment in the attachment proceeding.

The publication notice reads as follows: "Public notice is hereby given to the said Wilkin Manufacturing Company, that a writ of attachment issued out of the office of the clerk of the circuit court of Cook county, dated the 28th day of August, 1891, at the suit of the above named plaintiffs against the lands, goods, etc. Now, therefore, unless you, the said Wilkin Manufacturing Company, shall personally be and appear before the said circuit court of Cook county, on or before the first day of the next term thereof to be holden at the court house in the said city of Chicago on the third Monday of August, 1891, give bail, and plead to the said plaintiffs' action, judgment will be entered against you," etc. It is conceded, that the third Monday of August, 1891, was the seventeenth day of August. The objection to the notice is, that it requires defendant to appear on a day previous to the commencement of the suit, the suit having been begun by the issuance of the writ on August 28, 1891, and the day, on which defendant is required to appear, being August 17, 1891. Upon the face of the notice, the defendant was required to appear at an impossible date. But it is evident, that the clerk made a mistake by inserting in the notice the words "third Monday of August, 1891," instead of the words, "third Monday of September, 1891." The attachment writ was actually dated and issued on August 28, 1891. The next term of the court, as fixed by statute, began on the third Monday of September, 1891. The defendant was bound to know when the next term of court began. The statement, that it was to appear on the third Monday of August, 1891, may be regarded as surplusage, it being sufficient that it was required to appear at the next term after August 28; and that term was fixed by law as beginning on the third Monday of September.

It appears from the certificate of the publisher, that the notice was published three times, to-wit: on September 9, September 16, and September 23, 1891. It also appears from the certificate of the clerk, that a copy of the notice was mailed to the defendant on September 11, 1891. The presumption of law, in the absence of any proof to the contrary, is, that the notice was received by the defendant in due course of mail. The attachment writ, which is referred to in the notice as having been issued on August 28, directs the sheriff to summon the defendant to appear at a term of court to be held on the twenty-first day of September, 1891. The defendant was, therefore, advised of the error in the date named in the notice. Having in its hands a copy of the notice published on September 9, and mailed to it on September 11, it could not but infer that a mistake had been made in fixing the term of the court as the third Monday of August, instead of the third Monday of September. (*Goudy* v. *Hall*, 36 Ill. 313; *Clark* v. *Marfield*, 77 id. 258). In *Rogers* v. *Miller*, 4 Scam. 333, the summons directed the sheriff to summon the defendants to appear on the first day of the next term of court to be holden at, etc., without specifying the particular time, and it was there held, that the summons was not thereby rendered void or even voidable. In the latter case, we said: "The only object of naming any time in the process is to inform the party with a reasonable certainty of the time at which he may appear. As the time of holding the circuit court is fixed by law, every person not only has the means of knowing, but is presumed to know, when that time is; and this presumption is the less violent, as it is now frequently consonant with truth, and is less likely to work hardship than many other legal presumptions the propriety of which has never been questioned." (See, also, *Forsyth* v. *Warren*, 62 Ill. 68). The notice here informed the debtor of the attachment, at whose suit it was begun, against whose estate, for what sum, and before what court it was pending. It,

also, required him to appear at the next term of court. Section 22 of the Attachment act requires the notice to state, that defendant must appear "within the time limited for his appearance in such case." The time limited in such case is the next term of court; and the defendant is presumed to know when, under the law, the next term of court begins. '

Our conclusion upon this branch of the case is, that the judgment in the attachment proceeding was not invalid by reason of any of the objections thus urged against it, and that, inasmuch as the court, rendering it, had proper jurisdiction in the premises, the appellant, as garnishee, cannot successfully sustain an attack against it.

*Second*—Appellant contends, that the trial court gave a wrong construction to the contract in question, and, in pursuance of the construction so adopted, improperly excluded evidence offered by appellant, and improperly refused to hold as law certain propositions submitted by appellant. We are inclined to the opinion, that this contention of the appellant is correct, and that the action of the trial court upon this subject was erroneous.

By the terms of the contract, the appellee, the Wilkin Manufacturing Company, said: "We guarantee all these to be of the best material and workmanship, and to be equal or superior to any blowing engine on the market." In the first clause of the contract, appellee had said: "We propose to furnish you two blowing engines complete, as per specifications enclosed." The statement, that the specifications were enclosed in the letter of July 2, 1890, was afterwards corrected and modified by the statement, that the specifications were enclosed in a prior letter of June 24. The theory, upon which the trial court tried the case, was, that it was not competent to prove that other blowing engines on the market at the time of the contract were equal or superior to those constructed by the appellee, unless it was also shown that said engines were constructed in accordance with the same specifica-

tions.   In the course of the trial, the judge of the circuit court made the following rulings, viz.: "If you can show that any other engine of precisely the same specifications, or substantially the same specifications, named here, was on the market at the time, I will allow you to compare the engine, but it must not differ in specifications in any material way."   Again: "I will state to you now, that, if you can find any engine that was on the market then, constructed on the same specifications that these engines were constructed on, viz.: the specifications written and attached to this contract, I will allow you to compare these engines."   On the contrary, the theory of appellant was and is, that the Wilkin Manufacturing Company guaranteed the plan, scheme or device of the engines, and undertook that, when built according to the specifications, they would be as good for the purpose for which they were intended, as any engines which could have been purchased from any other manufacturer of like wares. Accordingly, the appellant submitted to the court to hold as law, in the decision of the case, propositions to the effect, that the words, "equal or superior to any blowing engine on the market" are equivalent to an undertaking or agreement on the part of the Wilkin Manufacturing Company, that the engines should be constructed in such manner, as to make them equal or superior in workmanship, and on such plan as to make them as efficient in service, as any blowing engine on the market.  The propositions so submitted by the appellant were refused by the trial court; and all the evidence offered by the appellant, tending to support its theory, was excluded by the court.   In this we think there was error.

The specifications, after giving a general description of the type of the engines, describe the cylinders, piston rods, connecting rods, fly-wheels, valve-gear, etc., constituting the various parts of the engine.  The words, "all these," in the contract refer not merely to the two engines as wholes, but to the various parts of which they

were thus made up. Appellee guaranteed that the engines and all their parts should be not only of the best material and workmanship, but also should be equal or superior to any blowing engine on the market; that is to say, that the engines in question and all their parts, constructed according to the specifications named, should be equal, in the accomplishment of the purpose and design for which a blowing engine is intended, to any other engine on the market, whether constructed according to the same specifications or not. Surely, the guaranty included something else besides the best material and workmanship; and the only other respect, in which the proposed engines could be made equal or superior to any blowing engine on the market, would be in their fitness and adaptability to effect the object, for which a blowing engine is used. An engine, built according to the particular specifications named, may be effective as a blowing engine, and another engine, built according to different specifications, may be equally effective as a blowing engine. The guaranty was not necessarily, that the engines named were to be as large, or as strong, or to do as much work, as engines twice as large might have done, but that the plan, scheme, type, or design should be equal or superior to any other engine. In other words, an engine of a certain size might be more effective for the purpose intended, if built upon a proper plan, than an engine twice as large would be, if built upon an improper plan.

The specifications in question were prepared by appellee, and not by appellant; and, therefore, the cases referred to by counsel, where the purchasers of machines or engines specify the particulars of their construction, do not apply. (*J. I. Case Plow Works* v. *Niles & Scott Co.* 90 Wis. 590; *Milwaukee Boiler Co.* v. *Duncan*, 87 id. 120). Where engines or machines are made specially for the purchaser thereof, and such purchaser specifies sizes, dimensions, and material, and examines and tests in advance engines or machines of the kind manufactured by the seller, he

takes the risk of their fitness for the use for which they are intended, and, in the absence of any written or oral warranty, no warranty of the suitableness of the engines or machines for the purpose desired can be implied. Here, however, the appellant did not order the engines to be constructed according to the specifications furnished by the appellant, but the appellee offered to supply engines built according to specifications made by appellee itself. Hence, the contract here was not for the manufacture and delivery of a specific kind or plan of engine of specified dimensions and sizes, but for the manufacture of engines to satisfy the required purpose. The appellant was building a blast furnace, and required a blowing engine in the operation of it. Where a manufacturer contracts to supply an article, which he manufactures, to be applied to a particular purpose, so that the buyer trusts to the judgment or skill of the manufacturer, there is ordinarily an implied warranty, that the article will be reasonably fit for the purpose, to which it is to be applied. Here, however, there is an express warranty, so that it is not necessary to resort to the doctrine of implied warranty. The test in such a case is, whether the purchaser trusts and relies upon the judgment of the manufacturer, and not upon his own judgment. That this was the construction, intended by the contract, appears from the following statement therein: "Payments to be made as follows: Fifty per cent on shipment, the balance when the engines are in successful operation," etc. They could not be in successful operation, unless they were so operated, as to fulfill the purpose and design for which such an engine is intended. In *City of Lake View* v. *MacRitchie*, 134 Ill. 203, the contract between the contractors and the town for laying a water pipe, etc., referred to the specifications and plans thereto attached, and the specifications provided, that all of the work to be guaranteed was to remain in good condition for one year from date of acceptance; it was there held that

such guaranty was as effectually made a part of the contract, as if its words had been incorporated in it; and we there said: "No reason is perceived why contractors may not guarantee against all defects, whatever their origin —whether they arise from insufficiency of the materials supplied, from unskillfulness of workmen, or from unfitness of the plan or design—whether devised by the one or the other of the parties to the contract, or by some other person."

The court below refused to allow the appellant to prove whether the engines in question were built of the best material and according to the best workmanship or not; or whether they were designed and constructed in a workmanlike manner; or whether the plan and manner of their construction were good or bad; or what kind of engines were then on the market; or whether the fly-wheels named in the specifications, which are generally counter-balanced, were good or not without the counter-balance; or whether the valve and valve-gear were properly adjusted or constructed. Without going further into detail, we cannot resist the conclusion, that appellant was not permitted fairly to present its theory of the case. Where a case is tried upon an erroneous or mistaken theory of law, the judgment should be reversed, and the case sent back for a new trial. (*Bright* v. *Kenefick*, 69 Ill. App. 43; *Kimball* v. *Doggett*, 62 id. 528). Even though the appellant received and used the engines, it was competent for it to show by way of recoupment, if it could do so, that they were not constructed according to the contract, or suitable for the purpose for which they were intended. (*Underwood* v. *Wolf*, 131 Ill. 425; *Morris* v. *Wibaux*, 159 id. 627).

*Third*—Appellant further objects, that the court below held the provision in the supplemental contract for the payment of $50.00 a day to be a penalty, and not liquidated damages. After a careful consideration of all the provisions of the supplemental contract, we are of the opinion that the parties intended the payment of the

$50.00 a day to be a penalty, and not liquidated damages. Where a contract provides for the payment, as a penalty, of a certain sum per day for delay in the delivery of an article, the only damages, which will be awarded, are the actual damages suffered on account of the delay; but where the sum to be paid is intended to be liquidated damages, such amount may be recovered irrespective of the question what damages were actually sustained. In the present case, our attention has not been called to any proof, introduced or offered by the appellant to show that actual damages were sustained by the delay in the delivery of the engines after May 1, 1891. It is also to be observed, that the appellant garnishee does not, in its answer, specifically set up its claim to the payment of $50.00 per day for the period between May 1, 1891, when the engines were to be delivered according to the terms of the contract, and September 13, 1891, when, as it is claimed, they were in fact delivered. It is oftentimes difficult to determine, whether a sum, named in an agreement as damages for its breach, will be treated as liquidated damages, or as a penalty. The application, however, of a few rules leads us to the conclusion that, in this case, the amount specified was intended merely to secure a prompt delivery of the engines, and was not an estimate by the parties of the actual damages suffered by the delay.

One of these rules is, that "the word 'penalty' *prima facie* excludes the notion of stipulated damages," although the use of either the word "penalty," or the words "liquidated damages" is not conclusive. (5 Am. & Eng. Ency. of Law, 24; *Scofield* v. *Tompkins*, 95 Ill. 190). One of the recitals in the supplemental contract speaks of the desire of the purchaser, that the contract should contain "a penalty in the nature of stipulated damages." Thus, the parties themselves designate the sum, to be paid, as damages for failure to furnish the engines at the time specified, as a penalty, although it is not apparent what is meant by a "penalty in the nature of liquidated dam-

ages." It is true, that the word "penalty" is used in the reciting part of the contract, and that recitals in an agreement do not of themselves alone have any obligatory force; "but they may be referred to in the operative part of an instrument in such a way as to show that they were designed to form a part of it." (*Trower* v. *Elder*, 77 Ill. 452). It is manifest that the recital here in the supplemental contract in regard to the penalty is referred to afterwards in the operative part of the contract.

Another one of the well established rules for determining, whether the amount is a penalty or liquidated damages, is, that, "in doubtful cases, the courts are inclined to construe the stipulated sum as a penalty." (5 Am. & Eng. Ency. of Law, 27). The supplemental contract in the present case is, in some of its terms, indefinite and uncertain as to the true meaning thereof. For instance, the contract provides, that the Wilkin Manufacturing Company will pay to the Iroquois Furnace Company, as liquidated damages for any delay which shall ensue after the first of April as to the first engine, and after the first of May as to the second engine, "the sum of $50.00 per day, for all time which the delivery of said engines shall be delayed after May 1, 1891." It seems to be doubtful whether or not the contract means, that, if one engine shall be delivered on the first of April, and the other not delivered until after the first of May, $50.00 shall be allowed only for each day that the delivery of the latter one is delayed. And yet the meaning of the contract cannot be said to be, that, if the delivery of both engines is delayed beyond May 1, $100.00 per day shall be paid, because, if this were the meaning, the contract would have provided for the payment of $50.00 per day for all the time, during which the delivery of such engines or either of them would be delayed beyond the respective days named. The first part of the last clause of the supplemental contract would seem to mean, that the sum of $50.00 per day should be allowed as liquidated

damages, if the first engine should not be delivered on April 1, and that an additional $50.00 should be allowed, if the second engine should not be delivered on May 1. But the contract proceeds to say, that the sum of $50.00 per day shall be allowed for all the time, during which the delivery of such engines shall be delayed after May 1, 1891. The agreement is thus, on its face, doubtful in meaning, if not actually inconsistent with itself. The specifications show, that the engines were composed of different parts, and that they were to be erected under the superintendence of a man furnished by the appellee after the delivery of these parts. If the great bulk of these parts should be delivered by May 1, but some un-important part should not be delivered for a considerable time after the main body of the engines was delivered, then the whole penalty could be recovered, upon the theory that all the parts, constituting the whole of the two engines, should be delivered on May 1. (*Colwell* v. *Foulks*, 36 How. Pr. 306; *Colwell* v. *Lawrence*, 36 Barb. 643).

Another rule of construction is that, where an agreement contains several stipulations of various degrees of importance, as to some of which the damages might be considered liquidated, whilst the damages for the non-performance of the others are not measurable by any exact pecuniary standard; and a sum of money is made payable in gross for a breach of any of them, such sum is held to be a penalty only, and not liquidated damages. (5 Am. & Eng. Ency. of Law, 26; *Trower* v. *Elder*, *supra*; Parsons on Contracts,—7th ed.—171; 1 Sutherland on Damages, 508). The contract here provided for the de-livery of two engines, instead of one, at different times, and the proof showed that the engines consisted of dif-ferent parts, and that these parts were to be erected into engines after their delivery. While it might be possible to estimate the damages resulting from delay in the de-livery of the first engine, thereby preventing the begin-ning of their erection, it might be difficult to estimate

damages resulting from delay in the delivery of the two engines, or of the second one.

In addition to what has already been said, the testimony tends to show that the appellant did not insist upon the prompt delivery on May 1 of all the parts of the engines, thereby appearing to waive its right to insist upon such prompt delivery. It is conceded that the material, out of which the engines were to be constructed, was not delivered until after July 1, 1891, although the contract required the delivery on May 1, 1891. The appellant paid towards the purchase money of the engines $6375.00 on July 21, 1891, and $6375.00 on August 11, 1891. The parts of the engines were not shipped until after July 7, 1891. The appellant did not inform appellee, that it intended to claim $50.00 a day as liquidated damages, when it made these payments. It is a serious question whether the making of such payments, after default had been made in the delivery of the engines, and after said delivery had been delayed several months after the time of delivery fixed in the contract, was not calculated to lead the appellee to understand that the appellant did not consider the sum of $50.00 a day as liquidated damages. If the amount agreed to be paid for breach of the contract greatly exceeded the actual damages suffered by the appellant on account of the delay in the delivery; that is to say, if the amount agreed to be paid is out of proportion to the probable damages sustained, the court will be disposed to treat the stipulated sum as a penalty. (*Scofield* v. *Tompkins, supra; Connelly* v. *Prost,* 72 Mo. App. 673).

For the error in the construction of the contract as above indicated, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court with instructions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*